Lynn R. Fiorentino (SBN 22691)
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065
Telephone: 213.629.7400
Facsimile: 213.629.7401
Email: lynn.fiorentino@afslaw.com

Attorneys for Lacoste USA, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE CODY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LACOSTE USA, INC.,<br><br>Defendant. | Case No. 8:23-CV-235-SSS-KK<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Date:          November 24, 2023<br>Time:          2:00 p.m.<br>Judge:         Hon. Sunshine S. Sykes<br>Courtroom:  2 |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK          - 1 -

AFDOCS:27193310.3

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

STATUTORY FRAMEWORK .................................................................................. 2

ARGUMENT ............................................................................................................. 5

    A.    Plaintiff's New Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements .............................................. 5

    B.    Lacoste Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law ...................................... 8

    C.    Hootsuite Is Still An Extension Of Lacoste In Any Event ............ 9

    D.    Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Which Is Foreclosed By Hootsuite's Privacy Policy .... 10

    E.    Plaintiff Fails To Plead That Any Actual Interception Occurred .... 12

    F.    Plaintiff's Claim Under Section 632.7 Is Facially Inapplicable To Website Chat Communications ................................................ 16

    G.    CIPA Cannot Survive Constitutional Scrutiny ............................ 18

Conclusion ............................................................................................................... 20

ArentFox Shiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK       - i -       DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ................................................. 7, 13

*Aljindi v. United States*,
No. CV-20-796-PSG-DFMX, 2021 WL 750835 (C.D. Cal. Feb. 16,
2021) ................................................................................................................. 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 5, 6, 7

*Beckles v. U.S.*,
580 U.S. 256 ..................................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 5

*Byars v. Hot Topic*,
No. 22-1652-JGB-KKX, 2023 WL 2026994 ...................................... 4, 6, 10, 18

*Campbell v. Facebook*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................................... 15, 17

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................. 13

*Domondon v. First Franklin*,
2016 WL 7479399 (C.D. Cal. June 23, 2016) ..................................................... 5

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ....................................................................................... 17

*Garcia v. Build.com*,
Case No. 22-cv-01985-DMS, 2023 WL 4535531 (S.D. Cal. July 13,
2023) ................................................................................................................... 1

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................... 9, 10

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - i -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

*Hammerling v. Google, LLC*,
    CIV No. 21-9004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1,
    2022) ................................................................................................ 15

*Hayes v. Cnty. of San Diego*,
    658 F.3d 867 (9th Cir. 2011) .......................................................... 3

*Hernandez v. Select Portfolio Servicing, Inc.*,
    2015 WL 12658459 (C.D. Cal. Oct. 29, 2015) .............................. 12

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .......................................................... 13

*Leason v. Berg*,
    927 F.2d 609 (9th Cir. 1991) .......................................................... 11

*Licea v. Cinmar*,
    2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ....................... 1, 14, 18

*Licea v. Vitacost.com, Inc.*,
    Case No. 22-CV-1854-RSH, 2023 WL 5086893 (S.D. Cal. July 24,
    2023) .................................................................................................. 1

*Lindsay-Stern v. Garamszegi*,
    2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) .............................. 14

*Martin v. Sephora*,
    Case No. 1:22- cv-01355-JLT, 2023 WL 2717636 (E.D. Cal. Mar.
    30, 2023) ............................................................................................ 1

*Membrila v. Receivables Performance Mgmt., LLC*,
    No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) .......... 8

*Montantes v. Inventure Foods*,
    No. CV-14-1128-MWF RZX, 2014 WL 3305578 (C.D. Cal. July 2,
    2014) ........................................................................................... 4, 16

*NovelPoster v. Javitch Canfield Grp.*,
    140 F.Supp.3d 938 (N.D. Cal. 2014) .............................................. 14

*Pena v. GameStop, Inc.*,
    Case No. 22-cv-1635 JLS, 2023 WL 3170047 (S.D. Cal. Apr. 27,
    2023) .................................................................................................. 1

ARENTFOX SHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK     - ii -     DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

*People v. Carella*,
   191 Cal.App.2d 115 (1961) ................................................................... 14

*People v. Cho*,
   No. E049243, 2010 WL 4380113 (Cal. Ct. App. Nov. 5, 2010) .................. 3, 14

*People v. Nakai*,
   183 Cal. App. 4th 499, 107 Cal. Rptr. 3d 402 (2010) ................................ 3, 14

*Pineda v. Mortgage Electronic Registration Systems, Inc.*,
   2014 WL 346997 (C.D. Cal. Jan. 29 2014) .......................................... 12

*Powell v. Union Pac. R. Co.*,
   864 F. Supp. 2d 949 (E.D. Cal. 2012) ................................................. 3, 8

*Project Veritas v. Schmidt*,
   72 F. 4th 1043 (9th Cir. July 3, 2023) ............................................. 19, 20

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
   884 F.3d 812 (9th Cir. 2018) ............................................................ 2

*Rogers v. Hedgpeth*,
   320 Fed.Appx. 815 (9th Cir. 2009) ................................................. 11, 13

*Rosenow v. Facebook, Inc.*,
   No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .................... 13

*Smith v. LoanMe, Inc.*,
   11 Cal. 5th 183 (2021) ........................................................... 4, 17, 18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................ 11, 12

*Tavernetti v. Superior Court*,
   22 Cal.3d 187 (1978) .......................................................... 2, 3, 8, 9

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................ 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
   Case No. 22-cv-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24,
   2023) ........................................................................................... 1

*In re Vizio Inc. Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................. 7, 13

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - iii -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (Ct. App. 1979) .............................................................. 3, 8

*Williams v. What If Holdings, LLC*,
    CIV No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22,
    2022) .................................................................................................... 10

**Statutes**

Cal. Pen. Code §§ 633.5 and 633.6 ........................................................... 19

Cal. Penal Code § 631 ............................................................... *passim*

Cal. Penal Code Section 633.5 .................................................................. 19

California Consumer Privacy Act ................................................................. 2

CIPA, the Wiretap Act ............................................................................ 13

federal Wiretap Act ............................................................................... 13

Penal Code Sections 630, 631, 632, and 632.7 ............................................. 2

Penal Code section 632.7…...................................................................... 17

Privacy Act, Sections 631 and 632.7 ..................................................... 2, 19

Wiretap Act ........................................................................................ 14

ARENTFOX SHIFFLLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK                    - iv -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

# **INTRODUCTION**

Plaintiff and her counsel's attempts to criminalize the ubiquitous website chat feature under a Cold War-era wiretapping statute have hit several major roadblocks, not least of which was this Court's recent holding that Plaintiff's "superficial" allegations "are insufficient to render plausible" her jurisdictional allegations, "**let alone that they suffered the purported CIPA violations Plaintiff describes**." Show Cause Order, Dkt. No. 25 at 4 (citing *Byars v. Hot Topic,* No. 22-1652-JGB-KKX, 2023 WL 2026994, at *5-6) (emphasis added).    While Plaintiff has supplemented her jurisdictional allegations, her "substantive" allegations remain just as superficial and inadequate as this Court and numerous others have already found.[1]

Ultimately the only material changes since Lacoste filed its last motion to dismiss (Dkt. No. 17-1), beyond even more courts dismissing Plaintiff's template pleading, is that the Ninth Circuit invalidated Oregon's indistinguishable "wiretapping" statute because it is facially unconstitutional.  *See* Dkt. No. 27 at 6-7 (citing *Project Veritas v. Schmidt*, 72 F. 4th 1043 (9th Cir. July 3, 2023)).  And as Lacoste recently raised, the CIPA sections at issue here suffer from the exact same content-based infirmities that led the Ninth Circuit to invalidate Oregon's law. *Id.* The same result should be reached here as another ground to dismiss Plaintiff's

---

[1]      *See, e.g.*, *Licea v. Vitacost.com, Inc.*, Case No. 22-CV-1854-RSH, 2023 WL 5086893, **3-4 (S.D. Cal. July 24, 2023) (rejecting as insufficient allegations—nearly identical to those here—that the third-party software used for the defendant's chat function was "integrated" with Meta and could sell customer data to Meta); *Garcia v. Build.com*, Case No. 22-cv-01985-DMS, 2023 WL 4535531, **5-6 (S.D. Cal. July 13, 2023) (rejecting similar claim); *Valenzuela v. Keurig Green Mountain, Inc.*, Case No. 22-cv-09042-JSC, 2023 WL 3707181, *4 (N.D. Cal. May 24, 2023) (same); *Pena v. GameStop, Inc.*, Case No. 22-cv-1635 JLS, 2023 WL 3170047, **1, 3-4 (S.D. Cal. Apr. 27, 2023) (rejecting as insufficient allegations that the "recordings" were "share[d] . . . with Zendesk, a third party that publicly boasts about its ability to harvest highly personal data from chat transcripts for sales and marketing purposes"); *Licea v. Cinmar*, 2023 WL 2415592, **8-10 (C.D. Cal. Mar. 7, 2023) (rejecting similar claim); *Martin v. Sephora*, Case No. 1:22- cv-01355-JLT, 2023 WL 2717636, **12-13 (E.D. Cal. Mar. 30, 2023) (same).

claims with prejudice, in addition to the grounds that Lacoste previously advanced, detailed again below.

### **STATUTORY FRAMEWORK**

Plaintiff's claims arise under two distinct provisions of the California Invasion of Privacy Act, Sections 631 and 632.7.[2]  Lacoste reiterates here that it is necessary to put a finer point on the California Supreme Court's binding *Tavernetti* decision addressing its interpretation of Section 631 at the outset.  There, the court specifically held that Section 631 "prescribes criminal penalties for **three distinct and mutually independent** patterns of conduct": "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in transit *over a wire***, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978)) (emphasis added).  Thus, courts are respectfully misinterpreting, if not rewriting, this decision to find that there are ***four*** patterns of conduct that are actionable – i.e., by creating a *separate* free-ranging "aiding and abetting" cause of action distinct from the third category above.

**But that is not how the California Supreme Court interprets the statute**, and its interpretation is **binding** on federal courts.[3]  Indeed, that is not even how *Plaintiff* interprets the statute, as she also condenses the third prong of Section 631 as encompassing any "aiding and abetting" activity.  *See* SAC ¶ 48.  Put differently, federal courts more recently have been asking the *wrong* question: can a defendant "aid and abet" – conduct subsumed in pattern 3 – "attempting to learn the contents

---

[2]    Lacoste will not repeat here the statutory history and interplay between the California Consumer Privacy Act and Penal Code Sections 630, 631, 632, and 632.7, but incorporates its prior summary by reference.  *See* Dkt. 14-1 at 3-7.

[3]    "When interpreting state law, federal courts are bound by decisions of the state's highest court."  *PSM Holding Corp. v. Nat'l Farm Fin. Corp*., 884 F.3d 812, 820 (9th Cir. 2018) (quoting *Ariz. Elec. Power Co-Op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                   - 2 -                   DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

or meaning of a communication in transit over a wire" – or pattern 2 conduct?  This analysis thus conflates what the California Supreme Court has ruled, again, are "three distinct and **mutually independent** patterns of conduct" – or by making pattern 3 conduct *dependent* on pattern 2 conduct.

Point being, the actual question this Court needs to address under the third **and final** prong of Section 631(a), as interpreted by the California Supreme Court, is whether Plaintiff can state a claim that Lacoste is "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  **This should be the only remaining question.**  And critically, given CIPA's express purpose of preventing secret eavesdropping, Section 631 consistently "has been held to apply **only** to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (emphasis added); *see also Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation **cannot "be liable** for aiding or conspiring with a third party to enable that party to listen in on the call.") (emphasis added).

Section 632, by contrast, restricts any party from recording a confidential communication and then further passing it on. *See People v. Nakai,* 183 Cal. App. 4th 499, 519, 107 Cal. Rptr. 3d 402, 418 (2010) (analyzing whether to exclude recorded chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user");[4] *see also People v. Cho,*

---

[4]    Federal district courts are also bound to follow the analysis of state appellate courts.  *See Hayes v. Cnty. of San Diego*, 658 F.3d 867, 870 (9th Cir.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                - 3 -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) (online "chat conversations do not qualify as confidential communications for purposes of Section 632" and as result, holding that such conversations are not protected under CIPA).

Finally, Section 632.7 was adopted to address an "**exclusive list** of five types of **calls** …: a communication **transmitted** <u>**between**</u> (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone. According to this list of included types of telephones, the communication **must have** a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless, or landline telephone **on the other side**." *Montantes v. Inventure Foods*, No. CV-14-1128-MWF RZX, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) (emphasis added).  Simply put, Section 632.7, does "not apply in the context of text-based communications on a website" when there is admittedly no telephone on the defendant's side. *Hot Topic, Inc.*, 2023 WL 2026994, at *11 (C.D. Cal. Feb. 14, 2023).

To be sure, Lacoste is mindful of the Court's prior rulings in *Goodyear* and *Old Navy*, but as Lacoste has already explained, the Court's analysis in these cases was respectfully incorrect because the Court was seemingly conflating cases addressing claims under Section *632*, not *632.7*.  *See* Dkt. No. 55, ¶¶ 5-8.  Lacoste anticipates that this clarification, coupled with the California Supreme Court's express holding that Section 632.7  applies to "'a communication transmitted **between**' a cellular or cordless telephone ***and another telephone***"[5] should lead the

---

2011), *certified question answered*, 57 Cal. 4th 622 (2013) ("In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court **must follow** the state intermediate appellate court decision") (emphasis added).  The fact that California state appellate courts have routinely analyzed chat "recording" complaints under Section 632, and not Section 631, should also end the Court's inquiry here.

[5]    *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021) (emphasis added).

Court to adopt the otherwise consistent view that a Section 632.7 claim has no application to smartphone-to-website communications.

## STANDARD OF REVIEW

A plaintiff must state "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)  A claim has "facial plausibility" only if the plaintiff pleads **facts** – **not conclusions** – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In resolving a 12(b)(6) motion, the Court must follow a two-pronged approach.  First, the Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by **mere conclusory statements**, **do not suffice**." *Iqbal*, 556 U.S. at 678.  Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" *Id*. at 678-80 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Nat.-Immunogenics Corp.*, 2020 WL 5239856, at *4 (C.D. Cal. Aug. 3, 2020).[6]

## ARGUMENT

**A.     Plaintiff's New Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements**

As the Court is aware, Judge Bernal previously chastised Plaintiff's counsel in

---

[6]     As previously briefed, California district courts particularly disfavor coordinated cookie-cutter lawsuits such as this one. *See, e.g., Domondon v. First Franklin*, 2016 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint under Rule 8 where "[p]lainly this pleading was not carefully constructed" but "[i]nstead it appears to be a 'cut and paste' of similar complaints filed in other actions.").

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                    - 5 -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

indistinguishable cases for "drumm[ing] up these lawsuits" and his practice of "copying and pasting from boilerplate pleadings." *Hot Topic*, 2023 WL 2026994 at *4.   As the court noted, "[i]nitiating **legitimate litigation** generally requires a considerable expenditure of time" as "a plaintiff must plead **specific facts** arising out of a **specific encounter** with a **specific defendant**." *Id.* (emphasis added).

Nothing has changed since this ruling.   If there was *any* validity to the conclusory Meta conspiracy theory that (now) underpins all of these cases,[7] Plaintiff could easily allege "Plaintiff wrote to Defendant about X, Y and Z on such and such date, and then she began to receive targeted advertisements about X, Y and Z on such and such third-party sites." *That* type of allegation would at least *begin* to make a basic attempt to establish that third parties are somehow learning the *contents of her communications* with Defendant – the **very essence** of her CIPA claims.

Instead, Plaintiff's SAC is a hodgepodge of entirely conclusory allegations devoid of *any well-pled facts*.   Formulaic assertions that third parties are "eavesdropping" "during transmission and in real time" have never carried the day previously, and there is a reason for that: the Supreme Court has ruled lower courts **must disregard** allegations that are legal conclusions, even when they are disguised as "facts." *Iqbal*, 556 U.S. at 681.

By the same token, all of Plaintiff's allegations attempting to outline a conspiracy theory involving Meta and Facebook are entirely conclusory as well.

---

[7]    It should be noted that Plaintiff's original complaints were predicated on online retailers *directly* "wiretapping" their own websites, as Plaintiff presumably did not understand website operators could not be liable as a parties to the alleged communications. As Plaintiff's litigation group has had complaint after complaint dismissed under prior template theories, their allegations have become more and more fantastical in their transparent attempts to match the third-party focus of the actual law at issue.   But since they started this scheme immediately after *Javier* with the belief they could simply type "returns" to commence these suits, without more, they will never be able to properly allege *the specific facts arising out of a specific encounter with a specific defendant* – without revealing how manufactured these claims are.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                          - 6 -                          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

SAC ¶¶ 27-32.  Plaintiff's new narrative is premised on a Bloomberg article behind a paywall that apparently states Meta acquired **a different chat service provider** in competition with Hootsuite because Meta supposedly has a "plan to make money off of its two messaging apps, WhatsApp and Messenger.  Meta hopes businesses will use WhatsApp … in lieu of other forms of customer communication."  SAC ¶ 31.  What conceivable relevance this has here **when no one is even using WhatsApp or Messenger, but a competing chat service**, is never explained.  Plaintiff's additional allegations spring from this *non sequitur* to the unsupported assertion that "Hootsuite harvests valuable data from those chat conversations," "shares it with Meta" and "Meta sells advertising to companies based upon the data from the chat transcripts." *Id.* ¶ 32.  Of course, Plaintiff provides absolutely no supporting factual allegations for these conclusory assertions – such as *how* Meta (or any other entity) allegedly "bombarded" her "with targeted advertising," or what "valuable data" Hootsuite harvested from her chat, if any, with Lacoste.  *Id.*

At bottom, allowing implausible and conclusory wiretapping complaints like Plaintiff's to proceed to discovery creates a direct and irreconcilable conflict with existing precedent from this District regarding the pleading requirements in these cases.  *See*, *e.g.*, *In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (dismissing plaintiff's Section 631 claim **with prejudice** because the two text messages at issue were first received at the destination address – that **is this case**).  The only difference between this case, *Vizio* and *Adler* is that Plaintiff's allegations are *even more* conclusory and self-defeating.  Lacoste respectfully submits that the Court need only follow through on its prior holding that Plaintiff's allegations are entirely "superficial" and dismiss these same conclusory allegations – for good.

**B.**     **Lacoste Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law**

As the Court already recognized in *Boscov's*, Lacoste cannot be liable under the second prong of Section 631 for "eavesdropping" because it was a party to the purportedly "intercepted" communication.  That is, California courts have long held that Section 631 applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Membrila v. Receivables Performance Mgmt., LLC,* No. 09-cv-2790, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (ruling that party to conversation could not have intercepted or eavesdropped, because only a third party **listening *secretly* to a *private* conversation** can do so).

And as Lacoste detailed above, under the California Supreme Court's *binding* interpretation of Section 631(a), and as recognized by Plaintiff (SAC ¶ 48), the ***only*** remaining question should be whether Plaintiff can state a claim under the third prong.  That is, can Lacoste be "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  The short answer is, no, this should be impossible. Lacoste is not allegedly violating the first activity (wiretapping telephone lines), and Lacoste legally cannot obtain information in violation of the second activity (eavesdropping), because it is a party to the communication.

Lacoste therefore cannot be "engaging in either of the two previous activities," and a violation of the third prong of Section 631 by Lacoste is logically foreclosed. *See Powell,* 864 F. Supp. 2d at 955 (holding it is legally impossible for party to communication to fall within scope of Section 631); *Warden*, 99 Cal.App.3d 805, (1979) ("[S]ection 631 ... has been held to **apply *only* to eavesdropping by a third party**") (emphasis added).  Lacoste respectfully submits that this is the only proper analysis given the California Supreme Court's holding in *Tavernetti*.

Thus, as a conceptual matter, analyzing whether Lacoste can "aid and abet" any "attempt[] to learn the contents or meaning of a communication in transit over a

wire" is, in Lacoste's view, a fundamental misinterpretation of the California Supreme Court's binding *Tavernetti* decision. *Tavernetti*, 22 Cal.3d 187, 192 (1978)). It takes what should be **"mutually independent** patterns of conduct" and conflates them into *mutually dependent* patterns that effectively combine the second and third prongs. *Id.* Lacoste therefore respectfully submits that under the analytical framework mandated by *Tavernetti*, the Court's analysis should be simple: Lacoste legally cannot violate Section 631 as party to the communication.

### C.   Hootsuite Is Still An Extension Of Lacoste In Any Event

Even if the Court were to analyze Plaintiff's complaint under the same "derivative liability" standards as it did in *Boscov's* and whether Hootsuite is alleged to be harvesting data for its own use independent of its services to Lacoste, Plaintiff's new conclusory allegations do not plausibly take this case out of the *Graham v. Noom* paradigm adopted by the Court. *Boscov's*, 2023 WL 2338302, at *2 (adopting reasoning "[c]onsistent with the reasoning of cases like *Graham v. Noom, Inc.*"). That is, Judge Beeler's decisions were predicated on analyzing whether plaintiffs were alleging facts sufficient to plausibly conclude that the software provider's "aggregation of data [was] for resale" to third parties, i.e., whether the vendor "intercepted and used the data itself" for its own purposes. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Leaving aside the entirely conclusory and vague nature of Plaintiff's new allegations – which start from the double *non sequitur* of Meta acquiring a *competing chat service* provider, Kustomer, and hoping businesses will use its entirely different messaging service WhatsApp, SAC ¶ 31, and conclude with the bogeyman of unspecified "targeted advertising" *id.* ¶ 32 – Plaintiff nowhere even hints that this unsubstantiated activity is occurring on behalf of any entity *other than Lacoste*. Indeed, Plaintiff expressly incorporates Hootsuite's website to make clear Hootsuite "boast[s] that it will '[t]ransform [Lacoste's] customer service from a cost center into a revenue generator." SAC ¶ 33. Plaintiff is clearly taking this irrelevant discussion

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                    - 9 -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

out of context, as the customer service referenced *is occurring within the chat between a Lacoste employee and a customer* – and not some unidentified website. Indeed, Plaintiff provides absolutely no specific factual support that *anyone*, including herself, was "bombarded" with "targeted advertising" as a result of chatting with Lacoste customer service department. Nevertheless, this unsubstantiated narrative is ultimately self-defeating because the only aspect of this theory that is remotely clear is that Hootsuite is acting directly for the benefit of Lacoste.[8] *Id.*

In the final analysis, Plaintiff's new allegations do not remotely, let alone plausibly, take this case out of this Court's, Judge Fitzgerald's or Judge Bernal's previous holdings. *See, e.g., Hot Topic*, 2023 WL 2026994 at *10 ("Here, as in *Williams* and *Graham*, Plaintiff does not allege a single fact that suggests the third-party 'intercepted and used the data itself.'" (*citing Williams v. What If Holdings, LLC*, CIV No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Plaintiff has pled herself out of court by alleging that Lacoste's vendor is acting as Lacoste's vendor.

### D. Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Which Is Foreclosed By Hootsuite's Privacy Policy

Notably absent from Plaintiff's theory that Hootsuite is somehow allowing Meta to harvest the Hootsuite chat transcripts for valuable data so that Meta can somehow bombard the unsuspecting website visitor with "targeted advertising," SAC ¶ 32, is any suggestion that *Lacoste* is aware of this conclusory scheme. *See, generally*, SAC. This failure is independently fatal to Plaintiff's claim against Lacoste because a defendant's specific knowledge of the underlying criminal acts

---

[8]     To argue otherwise would be beyond implausible; it would be absurd. No rational retailer like Lacoste would allow Hootsuite to harvest data from Lacoste's chat transcripts with its customers – let alone "in real time and in transit" – and then use that information to perform targeted advertising for *other competing companies*. This is the type of case the Supreme Court must have had in mind when it directed the lower courts to use basic common sense to screen out nonsensical complaints.

ARENTFOX SCHIFFLLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK          - 10 -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

*and* substantial assistance in such acts are essential elements to any "aiding and abetting" claim under California penal law. *Rogers v. Hedgpeth*, 320 Fed.Appx. 815, 817 (9th Cir. 2009) (quoting *People v. Mendoza*, 18 Cal. 4th 1114, 1123, 959 P.2d 735, 739 (1998)); *see also Leason v. Berg*, 927 F.2d 609 (9th Cir. 1991) ("Two **essential elements** in an aiding and abetting claim are: (1) the defendant must have had **actual knowledge** of the wrong and of his role in furthering it; and (2) the defendant must have substantially assisted in the wrong.") (emphasis added).

Of course, there is a good reason Plaintiff never alleges Lacoste has knowledge of this purported scheme: it is made up out of whole cloth, as Hootsuite's Privacy Policy incorporated by reference makes definitively clear. *See* SAC ¶ 30.[9] That is, Hootsuite unequivocally states that "[w]e do not sell your personal data to **any third party for direct marketing purposes** *or any other purpose*."[10]  Plaintiff's unsupported allegations of *any* entity engaging in "targeted advertising" by "harvesting data" from chat transcripts are thus directly contradicted by Hootsuite's Privacy Policy *that Plaintiff expressly relies on*.  Indeed, the *only* reason chat information would be "shared" with third parties – **expressly for non-marketing purposes** – is if such third party was providing the underlying technical infrastructure[11] needed to transfer chat communications to Lacoste.

As the Court of Appeals ruled, courts "need not…accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Indeed, "a plaintiff can…plead himself out of a claim by including unnecessary details contrary to his

---

[9]    Citing https://heyday.hootsuite.com/privacy/privacy-policy/.  The Court can and should take judicial notice of documents expressly incorporated into Plaintiff's Complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
[10]    *Id.*
[11]    This would be the equivalent of Verizon "sharing" data with AT&T in order to complete a communication over the latter's network.  Of course, there is no allegation here that Hootsuite used Facebook's technical infrastructure, so this already irrelevant provision is even more so.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                  - 11 -                  DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

claims." *Id.* (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)); *see also Pineda v. Mortgage Electronic Registration Systems, Inc.*, 2014 WL 346997 (C.D. Cal. Jan. 29 2014) (dismissing claim with prejudice after court took judicial notice of document which directly contradicted plaintiffs' allegations, and noting that because "Plaintiffs are unable to offer any evidence that the recorded documents are not accurate, leave to amend would be futile"); *Hernandez v. Select Portfolio Servicing, Inc.*, 2015 WL 12658459 (C.D. Cal. Oct. 29, 2015) (dismissing claim after finding that allegation in complaint was directly contradicted by a recorded document).

At bottom, Plaintiff never alleges that Lacoste *knowingly* aided and abetted Hootsuite's purported violations of the statute. And she never will be able to do so. That is because the Hootsuite Privacy Policy Plaintiff herself expressly incorporates into the SAC unequivocally demonstrates Plaintiff's unsupported conspiracy theories are entirely bunk. This warrants dismissal, and because amendment would be futile, dismissal should be with prejudice.

**E.     Plaintiff Fails To Plead That Any Actual Interception Occurred**

Plaintiff's Section 631 claim independently fails because she does not plausibly allege that any *interception* of her communication *in transit* **on a wire** plausibly occurred. Rather, what she actually complains of is that any chat communications with Lacoste reaches Lacoste's website, and then in the most conclusory fashion, alleges that Lacoste somehow enables Hootsuite "to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." SAC ¶ 28. In other words, the party to the communication (Lacoste) is receiving the communication first, and *then* it is (allegedly) storing communications with its chat service provider. For purposes of Section 631, Lacoste's website is the *end point* of the communication, which does not implicate Section 631's condition that the recording be "in transit," let alone *on a wire* **before** the communication reaches Lacoste's website.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                            - 12 -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

Plaintiff's conclusory – and counterfactual – claims of "interception" are thus insufficient as a matter of law.  *See In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing **much more detailed** and supported allegations of interception); *see also Rosenow v. Facebook, Inc.,* No. 19-cv-1297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to dismiss federal wiretap claim where allegations that communications were intercepted "in transit" were "conclusory").

In analyzing the federal analogue to CIPA, the Wiretap Act, the Ninth Circuit held that intercepting a communication means to "to stop, seize, or interrupt in progress or course **before arrival**." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added).[12]  It is conceptually impossible under this definition for a party to a communication to "intercept" that same communication at its destination – here, Lacoste's website, or for Hootsuite to intercept it *after* its arrival at Lacoste's website.  The court in *Rogers* fully embraced this conclusion as well: "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. App. 3d at 898.  **The Court is bound by this state appellate court ruling.** This is also the express holding of *Adler*, which Plaintiff has cited previously, and compels dismissal of Plaintiff's claim *with prejudice*.  *Adler*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (holding interception in transit was impossible because "Plaintiffs sent text messages to a celebrity's Community number, and the device paired with that number 'received the information, **effectively completing the communication**.'") (emphasis added).

Put differently, the communication, if any, Plaintiff had on Lacoste's website reached Lacoste – the intended recipient – there is no dispute about that.  Again, **under binding Ninth Circuit and state court precedent**, interception cannot occur

---

[12]    "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018).

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                      - 13 -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

unless defendants somehow "halt the transmission of the messages to their intended recipients." *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal. 2014). Conversely, "once an [electronic communication] has been received by the destination server, a communication becomes 'stored' **and contemporaneous interception is no longer possible**."). *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at \*4 (N.D. Cal. Oct. 13, 2016) (emphasis added); *see also American Eagle*, 2023 WL 2469630, \*8-10 (dismissing indistinguishable allegations that chat service provider "is able to gather the chat feature in real time" as merely "conclusory allegations" insufficient to meet *Twobly/Iqbal* pleading standards); *Cinmar*, 2023 WL 2415592, \*9-10 (same).[13]

What Lacoste does with a communication *after* Lacoste receives it is legally irrelevant under Section 631. Indeed, Section 632 would be entirely superfluous if recording a communication at its end point was also an "interception in transit" under Section 631. It is not surprising, therefore, that California courts have consistently analyzed CIPA claims concerning "recording" chat transcripts under Section 632, and not 631. *See Nakai,* 183 Cal. App. 4th at 519; *see also Cho,* 2010 WL 4380113, at \*5. And as noted above, federal district courts are required to defer to California state courts in their interpretation of CIPA.

To be sure, Lacoste is mindful that the Court previously found that the "allegation that user's messages were intercepted in transit is to be taken as true at this stage of the case." *Goodyear*, 2023 WL 1788553, \*4 (citing *Campbell v. Facebook*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014)). But respectfully, there is no

---

[13]     *See also People v. Carella*, 191 Cal.App.2d 115, 137-38 (1961) (holding 'no interception occurred' under predecessor statutes to Wiretap Act and Section 631 where stenographer from DA's office answered telephone and created transcripts of 45 calls: "no wire tapping or other connecting method was used' and 'messages sent were received in the ordinary course **over the means of transmission provided**.") (emphasis added).

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - 14 -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

comparison between Plaintiff's SAC here and the incredibly detailed, 29-page complaint underlying the *Campbell* decision, which contained meticulous discussion of the underlying investigations plausibly demonstrating Facebook was tracking private messages *outside its own network when it was not a party to the communication*. *See Campbell v. Facebook*, 4:13-cv-05996, Consolidated Amended Class Action Complaint (Dkt. No. 25), ¶¶ 15-58.

Even courts from that district are quick to distinguish *Campbell*. For example, in *Hammerling v. Google, LLC*, CIV No. 21-9004-CRB, 2022 WL 17365255, n. 15 (N.D. Cal. Dec. 1, 2022), Judge Breyer recently dismissed a CIPA complaint against Google. In so doing, he expressly held that "[t]his case is distinguishable from *Campbell v. Facebook* … where the parties alleged the mechanisms by which the defendant allegedly intercepted the messages at issue. … The amended complaint, by comparison, fails to allege any process by which Google intercepts this data in transit." *Id.* at n. 15. With all due respect to the Court, there are absolutely no factual allegations in these complaints detailing any mechanism by which third parties supposedly "eavesdrop in real time and during transmission" – particularly when the admitted context is that the Plaintiff is already communicating at the **destination website**. Plaintiff's new conclusory allegations that Meta *later* harvests the Hootsuite chat transcripts at some unspecified time removes all doubt that this is not an actual "interception" case. SAC ¶ 34. Again, as the Ninth Circuit has ruled, interception must occur *before* the communication reaches Lacoste.

To put a finer point on it, the "eavesdropping" clause of Section 631 specifically entails "willfully attempting to learn the contents or meaning of a communication **in transit *over a wire***." Cal. Penal Code § 631 (emphasis added). Plaintiff **nowhere alleges** that any entity is attempting to learn the contents of her communication while it is transiting some unspecified wire *before* reaching Lacoste's website. The Court's brief discussion in *Goodyear* does not attempt to explain how any interception is plausible, let alone remotely possible, under these statutorily

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                    - 15 -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

1 required circumstances.  For good reason – Plaintiff never alleges any facts to
2 establish the actual elements of the claim at issue.[14]

3      Ultimately, Plaintiff is attempting to dress up a Section 632 claim – which
4 prohibits *recording confidential communications* without all parties' consent – as a
5 Section 631 "wiretapping" claim – which applies to *third parties* intercepting private
6 communications *in transit over a wire **before*** it arrives at Lacoste.com.  The latter
7 scenario is not remotely this case.  After the communication reaches Lacoste's
8 website, it becomes, at most, a Section 632 issue how Lacoste stores its (non-
9 confidential) chat transcripts with its service provider Hootsuite.  There can be no
10 interception under these allegations, and Plaintiff's Section 631 claim should be
11 dismissed on this independent ground with prejudice.

12      **F.**    **Plaintiff's Claim Under Section 632.7 Is Facially Inapplicable To**
13              **Website Chat Communications**

14      Plaintiff's claim under Section 632.7 is facially inapplicable to
15 communications to Lacoste's website.  Judge Fitzgerald thoroughly analyzed this
16 distinct provision of CIPA in *Inventure Foods*, finding that by its plain terms, Section
17 632.7 exclusively applies to communications transmitted **between** "(1) two cellular
18 radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two
19 cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a
20 cordless telephone and a cellular radio telephone."  *Id.* at 2014 WL 3305578, at *4
21 (further noting that under California law, "individualized proof is required under §
22 632.7 to 'determine what type of telephone was used to receive the subject call.'"
23 (citation omitted)).  Simply put, there is no ambiguity in this statute.  "[O]nly [the]
24 **types of phones** listed in the statute are included," and the "communication must
25 have a cellular radio or cordless telephone **on one side**, and a cellular radio, cordless,
26 or landline telephone **on the other side**."  *Id.* (emphasis added).    And this

---

[14]      Put differently, "eavesdrop in real time and during transmission" is vacuous
filler that is not even responsive to the specific conduct prescribed by the statute.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - 16 -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

interpretation is entirely consistent with the California Supreme Court's *binding* holding that Section 632.7 only applies to conversations *between* two (particular) phones. *LoanMe,* 11 Cal. 5th at 183. That is admittedly not this case according to Plaintiff's own allegations. Indeed, Plaintiff alleges that she communicated with Lacoste's website – which is not a telephone of any kind. That *should* end the matter.

But as Lacoste is aware, the Court came to a different conclusion when presented with Goodyear's arguments. Lacoste, however, is hopeful that Judge Bernal's and Judge Fitzgerald's detailed and thoughtful holdings as to why *Goodyear* is erroneous and clearly "circumvent[s] the plain language of Section 632.7" will give the Court reason to reconsider, which the Court seems poised to do given the Show Cause Order. Dkt. No. 25 at 4 (favorably citing *Hot Topic*, in which Judge Bernal held "*Goodyear*'s reasoning rests on the false premise that Goodyear was using a telephone at all: the allegations there, as here, make it abundantly clear that it was *not* using a telephone at all.") (emphasis in original).[15] While Lacoste

---

[15] Like the *Campbell* decision discussed above, if the Court were to review the operative complaint in *McCabe*, it would easily show that the allegations at issue there were clearly distinguishable because the plaintiffs there were **specifically alleging two-way telephone conversations**: "Plaintiffs had a reasonable expectation that their telephone conversations with Defendant's employees and agents were, and would remain, private and confined **to the parties on the telephone**." Sec. Am. Compl. ¶ 17 (Dkt. No. 54) (emphasis added). That is clearly not this case, and why Judge Bernal was correct in holding *McCabe* is inapposite. The same reasoning applies to *Flanagan v. Flanagan*, 27 Cal.4th 766, 771 (2002), where the California Supreme Court was clearly and expressly addressing a Section 632.7 claim in the context of recording voice conversations **between** a cellular phone and another phone: "Michael testified that Honorine had recorded 27 telephone calls between him and his father. He placed nine calls from a cellular phone." At no point did the California Supreme Court ever hint at the possibility that the absence of a telephone on one end of the conversation would somehow be sufficient to state a claim under this statute. In fact, as the California Supreme Court more recently held in *Smith v. LoanMe, Inc.,* 11 Cal. 5th 183 (2021), "[u]nder Penal Code section 632.7…, it is a crime when a person 'without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - 17 -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

incorporates the analyses of *Hot Topic* and *Cinmar* in full, a shorter explanation is that the Court should not allow allegations establishing *half a claim* to proceed. It is a basic requirement of pleading that a plaintiff "must adequately allege **all of the elements** of each of his claims and the legal basis of such claims with **sufficient supporting facts**." *Aljindi v. United States*, No. CV-20-796-PSG-DFMX, 2021 WL 750835, at *1 (C.D. Cal. Feb. 16, 2021) (emphasis added).

That is *not* this case. Indeed, as a threshold matter, *Plaintiff* is admittedly doing the "recording" otherwise actionable under the statute by allegedly writing on Lacoste's website – and thus she is clearly trying to hold Lacoste liable *for her own actions*. Put differently, she is effectively rewriting Section 632.7 by imposing an obligation on Lacoste to *delete* messages that Plaintiff herself recorded. Recognizing the absurdity of applying Section 632.7 to written communications over the Internet, Judge Fitzgerald sensibly held that this statute "does not extend protection to communications over the internet." *Cinmar*, 2023 WL 2415592, *12.

Independently, and in the final analysis, Plaintiff alleges, at most, that she, and she alone, was using a smart phone to engage in non-voice communications with a website. "Plaintiff admits that Defendant was **not using a telephone**, and thus her second cause of action fails as a matter of law. Because it would be futile to amend the pleadings as to" her Section 632.7 claim, it should be dismissed with prejudice. *Bryar*, 2023 WL 2026994 at 11 (emphasis added).

## G.  CIPA Cannot Survive Constitutional Scrutiny

CIPA is impermissibly discriminatory on at least two grounds. First, as

---

the interception or reception and intentional recordation of, a communication transmitted **between**' a cellular or cordless telephone **and another telephone**." *Id.* at 187 (emphasis added). This is the **first sentence** of the decision, and thus all precedent analyzing Section 632.7 needs to be analyzed in the context of whether communications are occurring *between* two phones. That is not this case. *See also* Dkt. No. 23, ¶¶ 5-8 (detailing cases that Court previously relied on were actually analyzing separate statute, Section 632, which has distinct elements).

ArentFox Shiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - 18 -          DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

Defendant has already raised, Section 631(b) expressly exempts "the services and facilities of the public utility" from the scope of CIPA.  The only way CIPA can pass constitutional muster today is if new entrants into the communications marketplace share the same protections as traditional public utilities, that is, if it does *not* favor particular service providers over others.  Section 631, however, does expressly the opposite: it favors telecommunications service providers over competing information service providers, making CIPA unconstitutional as applied here on this basis alone.  *See Beckles v. U.S.*, 580 U.S. 256, 262 (penal laws that "encourage arbitrary and discriminatory enforcement" are unconstitutional).

Further, the Ninth Circuit recently invalidated Oregon's indistinguishable two-party consent "wiretapping" law on First Amendment grounds as well.  *See Project Veritas v. Schmidt*, 72 F. 4th 1043, 1057 (9th Cir. 2023).  There, the Court of Appeals found Oregon's law a content-based restriction because, just like CIPA, "the rules imposed … vary depending on the activity being recorded…"  *Id.*; *Cf.* Cal. Pen. Code §§ 633.5 and 633.6 (containing nearly identical content-based exemptions to Section 631 and 632.7 claims (among others) to Oregon's law that the Ninth Circuit held fails strict scrutiny).  In Lacoste's view, there is no intellectually honest way to argue that the Ninth Circuit's invalidation of Oregon's wiretapping law because it was *facially unconstitutional* should also not compel the invalidation of CIPA on the same grounds.  Again, Oregon's law has nearly identical exemptions that were at the root of the Court of Appeals' analysis:

| | |
|---|---|
| • Oregon Revised Statute 165.540(5)(a) | • Cal. Penal Code Section 633.5 |
| • The statute's prohibitions "do not apply to: (a) A person who records a conversation during **a felony that endangers human life**;" | • "Sections **631**, 632, 632.5, 632.6, and **632.7** do not prohibit one party to a confidential communication from recording the communication for the purpose of obtaining |

| | evidence reasonably believed to relate to the commission by another party to the communication of the crime of extortion, kidnapping, bribery, **any felony involving violence against the person** … . |
|---|---|

The bottom line is that CIPA should be deemed unconstitutional both as applied in an unreasonably discriminatory manner to favor communications occurring over public utility networks, *and* facially because it exempts certain communications depending on their content.[16]

## **Conclusion**

For the foregoing reasons, Lacoste respectfully requests that Plaintiff's Second Amended Complaint be dismissed in its entirety with prejudice.

---

[16] One of the fundamental ironies to this current wave of CIPA litigation is that California has the strictest online privacy rules in the country through the CCPA, as modified by the CPRA. As Defendant has previously briefed, the CCPA is *the* comprehensive law specifically enacted to address online privacy and data sharing practices in the Internet ecosystem, *and* it specifically dictates how privacy policy disclosures should be made. And just as hard cases make bad law, so do bad arguments – or the failure to make one at all. Point being, in *Javier*, the Ninth Circuit was never asked to evaluate consent issues in the context of the CCPA – the *comprehensive* state law – which again – addresses how privacy notices are supposed to be presented to website visitors. Thankfully, *Javier* is unpublished and non-precedential – for good reason. That, however, is not the case for *Project Veritas* – it is a published decision binding on all Ninth Circuit district courts. Ultimately, *Project Veritas* provides a perfect roadmap to end these meritless CIPA cases once and for all: after invalidating CIPA on First Amendment grounds, consumers will still be amply protected under the CCPA, online retailers won't face tens of thousands of dollars in unnecessary legal fees for simply providing an online option to chat live with a customer service representative, and the Court's docket won't be clogged with these cookie-cutter cases.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                    - 20 -                    DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

1      Dated: October 27, 2023          **ARENTFOX SCHIFF LLP**

2

3                            By: _____

4                              LYNN R. FIORENTINO
                             Attorneys for Lacoste USA, Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENTFOX SHIFFLLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK      - 21 -      DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS