1   Lynn R. Fiorentino (SBN 22691)
2   **ARENTFOX SCHIFF LLP**
    555 West Fifth Street, 48th Floor
3   Los Angeles, California 90013-1065
    Telephone: 213.629.7400
4   Facsimile:  213.629.7401
    Email:   lynn.fiorentino@afslaw.com
5   Attorneys for Lacoste USA, Inc.

6

7

8                   UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10

11  ANNETTE CODY, individually and on       Case No.  8:23-CV-235-SSS-KK
    behalf of all others similarly situated,
12                                           **CLASS ACTION**
              Plaintiff,
13                                           **DEFENDANT'S MEMORANDUM OF
    v.                                       POINTS AND AUTHORITIES IN
14                                           SUPPORT OF ITS MOTION TO
    LACOSTE USA, INC.,                       DISMISS PLAINTIFF'S THIRD
15                                           AMENDED COMPLAINT**
              Defendant.
16

17                                           Date:          June 28, 2024
                                             Time:          2:00 p.m.
18                                           Judge:         Hon. Sunshine S. Sykes
                                             Courtroom:     Courtroom 2, 2nd Floor
19

20

21

22

23

24

25

26

27

28

ARENTFOX SCHIFF
LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK          - 1 -          DEFENDANT'S MEMORANDUM OF POINTS
                                                    AND AUTHORITIES IN SUPPORT OF ITS
                                                    MOTION TO DISMISS
AFDOCS:200281197.1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................ 1

II.    STATUTORY FRAMEWORK ...................................................... 2

III.   STANDARD OF REVIEW ........................................................... 5

IV.    ARGUMENT ............................................................................. 6

    A.     Plaintiff's Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements ............................................... 6

    B.     Lacoste Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law ............................... 9

    C.     Hootsuite Is Still An Extension Of Lacoste In Any Event ................ 11

    D.     Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Which Is Foreclosed By Hootsuite's Privacy Policy .......... 12

    E.     Plaintiff Fails To Plead That Any Actual Interception Occurred ....... 14

    F.     CIPA Cannot Survive Constitutional Scrutiny ................................... 17

V.     CONCLUSION ......................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
   2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ................................................. 9, 15

*Animal Legal Def. Fund. v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) ............................................................................ 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 5, 6, 7

*Beckles v. U.S.*,
   580 U.S. 256 ......................................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 5

*Byars v. Hot Topic*,
   No. 22-1652-JGB-KKX, 2023 WL 2026994 ................................................. 6, 12

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ............................................................................................. 19

*Clark v. Martinez*,
   543 U.S. 371 (2005) ........................................................................................... 19

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................. 15

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385 (1926) ........................................................................................... 19

*Domondon v. First Franklin*,
   2016 WL 7479399 (C.D. Cal. June 23, 2016) ...................................................... 6

*Garcia v. Build.com*,
   Case No. 22-cv-01985-DMS, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....................................................................................................................... 1

ArentFox Schiff
LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK          - i -          DEFENDANT'S MEMORANDUM OF POINTS
                                                    AND AUTHORITIES IN SUPPORT OF ITS
                                                    MOTION TO DISMISS

AFDOCS:200281197.1

*Garcia v. Build.com, Inc.*,
  No. 22-cv-1985-DMS-KSC, 2024 WL 1349035 (S.D. Cal. Mar. 29,
  2024)....................................................................................................................... 1

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021).................................................... 11, 12, 20

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................................................................ 19

*Greenley v. Kochava, Inc.*,
  No. 22-CV-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July
  27, 2023)............................................................................................................... 19

*Hayes v. Cnty. of San Diego*,
  658 F.3d 867 (9th Cir. 2011)................................................................................. 5

*Hernandez v. Select Portfolio Servicing, Inc.*,
  2015 WL 12658459 (C.D. Cal. Oct. 29, 2015) .................................................. 13

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) ..................................................... 3, 7

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023)................................................................ 20

*Kirch v. Embarq Mgmt. Co.*,
  702 F.3d 1245 (10th Cir. 2012) .......................................................................... 15

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002)............................................................................... 15

*Leason v. Berg*,
  927 F.2d 609 (9th Cir. 1991) .............................................................................. 12

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) ................................................................................................ 19

*Licea v. Cinmar*,
  2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ................................................. 1, 16

*Licea v. Vitacost.com, Inc.*,
  Case No. 22-CV-1854-RSH, 2023 WL 5086893 (S.D. Cal. July 24,
  2023)...................................................................................................................... 1

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                - ii -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

AFDOCS:200281197.1

*Lindsay-Stern v. Garamszegi*,
    2016 WL 11745948 (N.D. Cal. Oct. 13, 2016) ................................................. 16

*Martin v. Sephora*,
    Case No. 1:22- cv-01355-JLT, 2023 WL 2717636 (E.D. Cal. Mar.
    30, 2023) ................................................................................................................. 1

*Membrila v. Receivables Performance Mgmt., LLC*,
    No. 09-cv-2790, 2010 WL 1407274 (S.D. Cal. Apr. 6, 2010) ........................... 9

*NovelPoster v. Javitch Canfield Grp.*,
    140 F.Supp.3d 938 (N.D. Cal. 2014) ................................................................. 16

*Pena v. GameStop, Inc.*,
    Case No. 22-cv-1635 JLS, 2023 WL 3170047 (S.D. Cal. Apr. 27,
    2023) ...................................................................................................................... 1

*People v. Carella*,
    191 Cal.App.2d 115 (1961) ............................................................................... 16

*People v. Cho*,
    No. E049243, 2010 WL 4380113 (Cal. Ct. App. Nov. 5, 2010) .................. 5, 17

*People v. Nakai*,
    183 Cal. App. 4th 499, 107 Cal. Rptr. 3d 402 (2010) ................................. 5, 17

*Pineda v. Mortgage Electronic Registration Systems, Inc.*,
    2014 WL 346997 (C.D. Cal. Jan. 29 2014) ...................................................... 13

*Powell v. Union Pac. R. Co.*,
    864 F. Supp. 2d 949 (E.D. Cal. 2012) ......................................................... 4, 10

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*,
    884 F.3d 812 (9th Cir. 2018) .............................................................................. 4

*Rogers v. Hedgpeth*,
    320 Fed.Appx. 815 (9th Cir. 2009) .............................................................. 12, 15

*Rosenow v. Facebook, Inc.*,
    No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ....................... 16

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................ 13

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK        - iii -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

AFDOCS:200281197.1

*Steilberg v. Lackner*,
  138 Cal. Rptr. 378 (Cal Ct. App. 1977) ...............................................................3

*Tavernetti v. Superior Court*,
  22 Cal.3d 187 (1978).................................................................................3, 4, 9, 10

*United States v. Davis*,
  139 S. Ct. 2319 (2019) ...........................................................................................19

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ..................................................................................13

*United States v. Williams*,
  553 U.S. 285 (2008) ...............................................................................................19

*Valenzuela v. Alexander Wang, LLC*,
  23STCV12422 (L.A. Super. Ct., Dec. 27, 2023) (attached as
  Exhibit A) .................................................................................................1, 5, 10, 17

*Valenzuela v. Keurig Green Mountain, Inc.*,
  Case No. 22-cv-09042-JSC, 2023 WL 3707181 (N.D. Cal. May 24,
  2023).........................................................................................................................1

*In re Vizio Inc. Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017)........................................................8, 9, 16

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (Ct. App. 1979) .........................................................4, 5, 10

*Williams v. What If Holdings, LLC*,
  CIV No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22,
  2022).......................................................................................................................12

**Statutes**

Cal. Civ. Code § 1798.140 ............................................................................................3

Cal. Code Regs. Tit. 11 § 7012(c)(1) ...........................................................................3

Cal. Penal Code § 631 .......................................................................................*passim*

ARENTFOX SHIFFLLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK                - iv -

DEFENDANT'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS
MOTION TO DISMISS

AFDOCS:200281197.1

## I.    **INTRODUCTION**

Plaintiff and her counsel's attempts to criminalize the ubiquitous website chat feature under a Cold War-era wiretapping statute continue to hit roadblock after roadblock.[1]  Indeed, as one California state court recently reaffirmed, parties to a communication are ***categorically*** exempt from these Section 631 claims, as they can only be *potentially* liable under Section 632.[2]  And as this Court has previously held, Plaintiff's "superficial" allegations "are insufficient to render plausible" her prior jurisdictional allegations, "**let alone that they suffered the purported CIPA violations Plaintiff describes**."  Show Cause Order, Dkt. No. 25 at 4 (citing *Byars v. Hot Topic,* No. 22-1652-JGB-KKX, 2023 WL 2026994, at *5-6) (emphasis added).  Needless to say, that is exactly what the Court found in its latest Order, holding that Plaintiff failed to plausibly allege that any entity "read or learned the contents of a communication *while the communication was in transit, or in the process of being sent or received.*"  ECF No. 38 at 4 (emphasis in original).

Plaintiff's minimal additions to her Third Amended Complaint ("TAC") do not remotely rectify the deficiencies identified by the Court.  In fact, the new material

---

[1]    *See, e.g.*, *Garcia v. Build.com, Inc.*, No. 22-cv-1985-DMS-KSC, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) (dismissing Section 631 claim because third-party software provider was an extension of website operator); *Licea v. Vitacost.com, Inc.*, Case No. 22-CV-1854-RSH, 2023 WL 5086893, **3-4 (S.D. Cal. July 24, 2023) (rejecting as insufficient allegations—nearly identical to those here—that the third-party software used for the defendant's chat function was "integrated" with Meta and could sell customer data to Meta); *Garcia v. Build.com*, Case No. 22-cv-01985-DMS, 2023 WL 4535531, **5-6 (S.D. Cal. July 13, 2023) (rejecting similar claim); *Valenzuela v. Keurig Green Mountain, Inc.*, Case No. 22-cv-09042-JSC, 2023 WL 3707181, *4 (N.D. Cal. May 24, 2023) (same); *Pena v. GameStop, Inc*., Case No. 22-cv-1635 JLS, 2023 WL 3170047, **1, 3-4 (S.D. Cal. Apr. 27, 2023) (rejecting as insufficient allegations that the "recordings" were "share[d] . . . with Zendesk, a third party that publicly boasts about its ability to harvest highly personal data from chat transcripts for sales and marketing purposes"); *Licea v. Cinmar*, 2023 WL 2415592, **8-10 (C.D. Cal. Mar. 7, 2023) (rejecting similar claim); *Martin v. Sephora*, Case No. 1:22- cv-01355-JLT, 2023 WL 2717636, **12-13 (E.D. Cal. Mar. 30, 2023) (same).

[2]    *See Valenzuela v. Alexander Wang, LLC*, 23STCV12422 (L.A. Super. Ct., Dec. 27, 2023) (finding that website operator is **categorically immune** from liability under Section 631 of CIPA – as "[e]mploying another to record one's conversations is the sort of conduct that would be outlawed by section *632*," rather than section 631) (emphasis added) (attached as Exhibit A).

ArentFox Schiff
LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                - 1 -                DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

AFDOCS:200281197.1

Plaintiff adds to the TAC removes any doubt that this is a Section 632 *reception* complaint dressed up as a Section 631 *interception* complaint. That is, "Plaintiff's investigation as confirmed by a computer expert," TAC ¶ 28, depicts an entirely closed "**bidirectional** communication between the client (browser) and the server" hosting the chat service. TAC, Ex. 2 (emphasis added). In other words, this is a standard cloud-based communications service that goes from Point A to Point B in a single line – there are admittedly no "off ramps" for third parties to learn the contents of communications *while they are in transit on a wire* and **before** they are received at the destination server. *Id.*, Ex. 3. Indeed, Plaintiff's "computer expert" confirms that any chat communications are transmitted via HTTPS, which by definition means that this data is ***encrypted in transit***. *Id.*, Ex. 2 (emphasis added).[3] Point being, no entity is possibly learning the contents of any chat communications while they are in transit on a wire. Rather, Plaintiff makes it clear that her real complaint is that "[m]essages are **stored** on Amazon AWS in a manner commonly used for sharing data with third parties." *Id.* (emphasis added).

Simply put, Plaintiff has pled herself out of court on this sole issue that was sufficient for the Court to dismiss her Second Amended Complaint. Nor do Plaintiff's minimal changes to latest Complaint cure any of the other deficiencies previously identified by Lacoste, and raised again below. Ultimately, Plaintiff should not get a fourth bite at the apple to criminalize modern communications services.

## II.   STATUTORY FRAMEWORK

It should be noted at the outset that California has a first-in-the-nation comprehensive privacy law that gives consumers control over their personal data – the California Consumer Privacy Act ("CCPA"), as amended by the California Privacy Rights Act ("CPRA"). The CCPA purposely addresses how businesses can

---

[3]   *See, e.g.*, https://en.wikipedia.org/wiki/HTTPS (detailing that HTTPS is a widely used Internet communications protocol that encrypts data in transit and "protects the communications against eavesdropping and tampering.").

use consumers' information obtained online, what disclosures are required, and how such disclosures need to be made. Relevant here, Section 7012(c) of the CCPA regulations specifically authorizes website operators to collect personal information by "post[ing] a conspicuous link to the notice on the introductory page of the business's website and on all webpages where personal information is collected." Cal. Code Regs. Tit. 11 § 7012(c)(1).[4] There is no claim here – nor could there be – that Lacoste is not in compliance with any applicable requirements under the CCPA, the law that was enacted to specifically address online privacy and information sharing in the Internet ecosystem. Cal. Civ. Code § 1798.140.[5] And it "is a cardinal rule of statutory interpretation that specific statutory regulations control over the general statutes." *Steilberg v. Lackner*, 138 Cal. Rptr. 378, 383 (Cal Ct. App. 1977).

As for such general statutes, Plaintiff's sole remaining claim arises under Section 631 of CIPA. Lacoste reiterates here that it is necessary to put a finer point on the California Supreme Court's binding *Tavernetti* decision addressing its interpretation of Section 631 at the outset. There, the court specifically held that Section 631 "prescribes criminal penalties for **three distinct and mutually independent** patterns of conduct": "[1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication **in transit *over a wire***, and [3] attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, 22 Cal.3d 187, 192 (1978)) (emphasis added). Thus, courts are respectfully misinterpreting, if not rewriting, this decision to find that there are ***four*** patterns of

---

[4]     In other words, companies need only provide notice of their privacy practices via a persistent link to their Privacy Policy, which is exactly what Lacoste does.

[5]     These coordinated claims were being manufactured within days of the Ninth Circuit's **unpublished** decision *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), which ***solely*** addressed whether "retroactive consent is valid under Section 631(a)" as an issue of first impression. *Id.* at *1. Notably, the panel never considered the issue of notice and consent in the context of the CCPA's comprehensive regulations specific to online privacy matters. As an unpublished decision, *Javier* has no precedential value under Ninth Circuit Rule 36-3.

conduct that are actionable – i.e., by creating a *separate* free-ranging "aiding and abetting" cause of action distinct from the third category above.

**But that is not how the California Supreme Court interprets the statute**, and its interpretation is **binding** on federal courts.[6]  Indeed, that is not even how *Plaintiff* interprets the statute, as she also condenses the third prong of Section 631 as encompassing any "aiding and abetting" activity. *See* TAC ¶ 48.  Put differently, federal courts more recently have been asking the *wrong* question: can a defendant "aid and abet" – conduct subsumed in pattern 3 – "attempting to learn the contents or meaning of a communication in transit over a wire" – or pattern 2 conduct?  This analysis thus conflates what the California Supreme Court has ruled, again, are "three distinct and **mutually independent** patterns of conduct" – or by making pattern 3 conduct *dependent* on pattern 2 conduct.

Point being, the actual question this Court needs to address under the third **and final** prong of Section 631(a), as interpreted by the California Supreme Court, is whether Plaintiff can state a claim that Lacoste is "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  **This should be the only remaining question.**  And critically, given CIPA's express purpose of preventing secret eavesdropping, Section 631 consistently "has been held to apply **only** to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (emphasis added); *see also Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he **cannot be liable as a matter of law**"; further ruling by extension that a party to conversation **cannot "be liable** for aiding or conspiring with a third

---

[6]    "When interpreting state law, federal courts are bound by decisions of the state's highest court." *PSM Holding Corp. v. Nat'l Farm Fin. Corp*., 884 F.3d 812, 820 (9th Cir. 2018) (quoting *Ariz. Elec. Power Co-Op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

party to enable that party to listen in on the call.") (emphasis added).  And indeed, this was Judge Highberger's precise holding in *Alexander Wang*, which arose from the same template complaint filed by Plaintiff's counsel here.  *See Alexander Wang*, Ex. A at 2-3 (relying on *Warden* to hold that Section 631 "only covers instances where the guilty party works with another party to eavesdrop on the communications of ***separate parties***" – parties can only be liable under Section 632) (emphasis added).

And as for Section 632, this statute restricts any party from recording a confidential communication and then further passing it on. *See People v. Nakai,* 183 Cal. App. 4th 499, 519, 107 Cal. Rptr. 3d 402, 418 (2010) (analyzing whether to exclude recorded chat transcripts under Section 632, and not Section 631, and holding as a matter of law that "it was not reasonable … to expect that the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user");[7] *see also People v. Cho,* No. E049243, 2010 WL 4380113, at *5 (Cal. Ct. App. Nov. 5, 2010) (online "chat conversations do not qualify as confidential communications for purposes of Section 632" and as result, holding that such conversations are not protected under CIPA).

## III.  <u>STANDARD OF REVIEW</u>

A plaintiff must state "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)  A claim has "facial plausibility" only if the plaintiff pleads **facts** – **not conclusions** – that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In resolving a 12(b)(6) motion, the Court must follow a two-pronged approach.  First, the Court must accept

---

[7]        Federal district courts are also bound to follow the analysis of state appellate courts. *See Hayes v. Cnty. of San Diego*, 658 F.3d 867, 870 (9th Cir. 2011), *certified question answered*, 57 Cal. 4th 622 (2013) ("In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court **must follow** the state intermediate appellate court decision") (emphasis added).  The fact that California state appellate courts have routinely analyzed chat "recording" complaints under Section 632, and not Section 631, should also end the Court's inquiry here.

well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by **mere conclusory statements**, **do not suffice**." *Iqbal*, 556 U.S. at 678.  Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" *Id*. at 678-80 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.   This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Nat.-Immunogenics Corp.*, 2020 WL 5239856, at *4 (C.D. Cal. Aug. 3, 2020).[8]

## IV.   ARGUMENT

### A.    Plaintiff's Boilerplate And Conclusory Allegations Fail Basic Notice Pleading Requirements

As the Court is aware, Judge Bernal previously chastised Plaintiff's counsel in indistinguishable cases for "drumm[ing] up these lawsuits" and his practice of "copying and pasting from boilerplate pleadings." *Hot Topic*, 2023 WL 2026994 at *4.  As the court noted, "[i]nitiating **legitimate litigation** generally requires a considerable expenditure of time" as "a plaintiff must plead **specific facts** arising out of a **specific encounter** with a **specific defendant**." *Id.* (emphasis added).

Nothing has changed since this ruling.   If there was *any* validity to the conclusory Meta conspiracy theory that continues to underpin all of these cases,[9]

---

[8]    As previously briefed, California district courts particularly disfavor coordinated cookie-cutter lawsuits such as this one. *See, e.g., Domondon v. First Franklin*, 2016 WL 7479399, at *5 (C.D. Cal. June 23, 2016) (dismissing complaint under Rule 8 where "[p]lainly this pleading was not carefully constructed" but "[i]nstead it appears to be a 'cut and paste' of similar complaints filed in other actions.").

[9]    It should be noted that Plaintiff's original complaints were predicated on online retailers *directly* "wiretapping" their own websites, as Plaintiff presumably did not understand website operators could not be liable as a parties to the alleged communications. As Plaintiff's litigation group has had complaint after complaint dismissed under prior template theories, their allegations

Plaintiff could easily allege "Plaintiff wrote to Defendant about X, Y and Z on such and such date, and then she began to receive targeted advertisements *about X, Y and Z* on such and such third-party sites." *That* type of allegation would at least *begin* to make a basic attempt to establish that third parties are somehow learning the *contents of her communications* with Defendant – the **very essence** of her CIPA claims.

Instead, Plaintiff's TAC is a hodgepodge of entirely conclusory allegations devoid of *any well-pled facts*. Formulaic assertions that third parties are "eavesdropping" "during transmission and in real time" have never carried the day previously, and there is a reason for that: the Supreme Court has ruled lower courts **must disregard** allegations that are legal conclusions, even when they are disguised as "facts." *Iqbal*, 556 U.S. at 681. By the same token, all of Plaintiff's allegations attempting to outline a conspiracy theory involving Meta and Facebook are entirely conclusory as well. TAC ¶¶ 27-32. Plaintiff's narrative is premised on a Bloomberg article behind a paywall that apparently states Meta acquired *a different chat service provider* in competition with Hootsuite because Meta supposedly has a "plan to make money off of its two messaging apps, WhatsApp and Messenger. Meta hopes businesses will use WhatsApp … in lieu of other forms of customer communication." TAC ¶ 31. What conceivable relevance this has here **when no one is even using WhatsApp or Messenger, but a competing chat service**, is never explained. Plaintiff's additional allegations spring from this *non sequitur* to the unsupported assertion that "Hootsuite harvests valuable data from those chat conversations," "shares it with Meta" and "Meta sells advertising to companies based upon the data from the chat transcripts." *Id.* ¶ 32. Of course, Plaintiff provides absolutely no supporting factual allegations for these conclusory assertions – such as *how* Meta (or

---

have become more and more fantastical in their transparent attempts to match the third-party focus of the actual law at issue. But since they started this scheme immediately after *Javier* with the belief they could simply type "returns" to commence these suits, without more, they will never be able to properly allege *the specific facts arising out of a specific encounter with a specific defendant* – without revealing how manufactured these claims are.

any other entity) allegedly "bombarded" her "with targeted advertising," or what "valuable data" Hootsuite harvested from her chat, if any, with Lacoste.  *Id.*

Further, it is clear from Plaintiff's latest allegations that none of this alleged activity is occurring *while the communication is in transit on a wire* – let alone that Hootsuite is ***reading or learning the content*** while in transmission.  That is, Plaintiff merely alleges that "communications from the live chat feature on Defendant's Website ***are processed*** by Hootsuite's HeyDay chat widget in transit."  TAC, ¶ 32 (emphasis added).  But this is what *all* communications service providers do – they process communications on to their end point. No one would rationally characterize Hootsuite as "reading or learning" the contents of (**encrypted**) communications data simply by virtue of the data being processed and then stored on AWS servers in the cloud.  Point being, "reading or learning" the contents of communications is a quintessentially *human* process,[10] and no person is remotely attempting to *read or learn* the content of data that is encrypted in transit – **and Plaintiff does not allege otherwise**.  Ultimately, this is a penal statute that must be construed narrowly, and inanimate software processes should fall outside of the **plain language** that a person actually *read or learn* the contents while in transit.[11]

At bottom, allowing implausible and conclusory wiretapping complaints like Plaintiff's to proceed to discovery creates a direct and irreconcilable conflict with existing precedent from this District regarding the pleading requirements in these cases.  *See*, *e.g.*, *In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228

---

[10]    *See* https://www.merriam-webster.com/dictionary/read (to receive or take in the sense of (letters, symbols, etc.) **especially by sight or touch**) (emphasis added); https://www.merriam-webster.com/dictionary/learn (to gain **knowledge or understanding** of or skill in **by study, instruction, or experience**) (emphasis added).

[11]    This conclusion is also compelled by the fact that the Legislature expressly exempted the services of public utilities from the scope of this Section – which entities were the only communications service providers when the law was enacted in the 1960s.  Cal. Penal Code. § 631(b).  In other words, the Legislature clearly did not intend that communications service providers could violate this statute by "processing" the communications services that they provided, let alone that a party could be liable for "aiding and abetting" by using their services.

(C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021) (dismissing plaintiff's Section 631 claim **with prejudice** because the two text messages at issue were first received at the destination address – that **is this case**). The only difference between this case, *Vizio* and *Adler* is that Plaintiff's allegations are *even more* conclusory and self-defeating.  Lacoste respectfully submits that the Court need only follow through on its prior holding that Plaintiff's allegations are entirely "superficial" and dismiss these same conclusory allegations – for good.

## B.    Lacoste Cannot Be Liable Under Section 631 As A Party To The Communication As A Matter Of Law

As the Court already recognized in *Boscov's I*, Lacoste cannot be liable under the second prong of Section 631 for "eavesdropping" because it was a party to the purportedly "intercepted" communication.  That is, California courts have long held that Section 631 applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Membrila v. Receivables Performance Mgmt., LLC,* No. 09-cv-2790, 2010 WL 1407274, at *2 (S.D. Cal. Apr. 6, 2010) (ruling that party to conversation could not have intercepted or eavesdropped, because only a third party **listening** *secretly* **to a** *private* **conversation** can do so).

And as Lacoste detailed above, under the California Supreme Court's *binding* interpretation of Section 631(a), and as recognized by Plaintiff (TAC ¶ 48), the *only* remaining question should be whether Plaintiff can state a claim under the third prong.  That is, can Lacoste be "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti*, 22 Cal.3d 187, 192 (1978)).  The short answer is, no, this should be impossible. Lacoste is not allegedly violating the first activity (wiretapping telephone lines), and Lacoste legally cannot obtain information in violation of the second activity

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                     - 9 -

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

AFDOCS:200281197.1

1   (eavesdropping), because it is a party to the communication.[12]

2       Lacoste therefore cannot be "engaging in either of the two previous activities,"

3   and a violation of the third prong of Section 631 by Lacoste is logically foreclosed.

4   *See Powell,* 864 F. Supp. 2d at 955 (holding it is legally impossible for party to

5   communication to fall within scope of Section 631); *Warden*, 99 Cal.App.3d 805,

6   (1979) ("[S]ection 631 ... has been held to **apply *only* to eavesdropping by a third**

7   **party**") (emphasis added).  Lacoste respectfully submits that this is the only proper

8   analysis given the California Supreme Court's holding in *Tavernetti*.  And again, this

9   is the precise holding reached by the court in *Alexander Wang* in response to this

10  same defense to the same template complaint.

11      Thus, as a conceptual matter, analyzing whether Lacoste can "aid and abet"

12  any "attempt[] to learn the contents or meaning of a communication in transit over a

13  wire" is, in Lacoste's view, a fundamental misinterpretation of the California

14  Supreme Court's  binding *Tavernetti* decision.   *Tavernetti*, 22 Cal.3d 187, 192

15  (1978)).  It takes what should be **"mutually independent** patterns of conduct" and

16  conflates them into *mutually dependent* patterns that effectively combine the second

17  and third prongs.  *Id.*  Lacoste therefore respectfully submits that under the analytical

18  framework mandated by *Tavernetti*, the Court's analysis should be simple: Lacoste

19  legally cannot violate Section 631 as party to the communication.

20

---

21  [12]     Curiously, Plaintiff now alleges in her TAC that "Salesforce's employees, agents, or

22  representatives are involved with communicating with users of the chat feature on the Website during the live chat portion of the chat feature, as opposed to Defendant's own employees."

23  TAC, ¶ 28. This allegation is made despite the fact that Plaintiff's unidentified "computer expert" asserts that "[c]hat transcripts are ***not*** directly being sent to Salesforce, but the presence of the

24  beacons AFTER initiating a live chat indicates that Salesforce is somehow integrated into the live chat." TAC, Ex. 2 at 3 (emphasis added).  In other words, Salesforce – which provides customer

25  relationship management software to businesses – is *not* getting the actual communications, such that Plaintiff's conclusory assertion in her Complaint is directly contradicted by her own "expert."

26  Plaintiff's misinterpretation of her own expert is also legally irrelevant because there would be nothing actionable about Lacoste utilizing outside contractors to handle customer service

27  inquiries on its behalf – as there is no allegation that Salesforce is somehow "intercepting" chat communications in transit, let alone using these communications for its own purposes.  Simply

28  put, Plaintiff is alleging that Salesforce is an extension of Lacoste.

### C.    Hootsuite Is Still An Extension Of Lacoste In Any Event

Even if the Court were to analyze Plaintiff's complaint under the same "derivative liability" standards as it did in *Boscov's* and whether Hootsuite is alleged to be harvesting data for its own use independent of its services to Lacoste, Plaintiff's conclusory allegations do not plausibly take this case out of the *Graham v. Noom* paradigm adopted by the Court. *Boscov's*, 2023 WL 2338302, at *2 (adopting reasoning "[c]onsistent with the reasoning of cases like *Graham v. Noom, Inc.*"). That is, Judge Beeler's decisions were predicated on analyzing whether plaintiffs were alleging facts sufficient to plausibly conclude that the software provider's "aggregation of data [was] for resale" to third parties, *i.e.*, whether the vendor "intercepted and used the data itself" for its own purposes. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Leaving aside the entirely conclusory and vague nature of Plaintiff's allegations – which start from the double *non sequitur* of Meta acquiring a *competing chat service* provider, Kustomer, and hoping businesses will use its entirely different messaging service WhatsApp, TAC ¶ 31, and conclude with the bogeyman of unspecified "targeted advertising" *id.* ¶ 32 – Plaintiff nowhere even hints that this unsubstantiated activity is occurring on behalf of any entity *other than Lacoste*. Indeed, Plaintiff expressly incorporates Hootsuite's website to make clear Hootsuite "boast[s] that it will '[t]ransform [Lacoste's] customer service from a cost center into a revenue generator." TAC ¶ 33. Plaintiff is clearly taking this irrelevant discussion out of context, as the customer service referenced *is occurring within the chat between a Lacoste employee and a customer* – and not some unidentified website. Indeed, Plaintiff provides absolutely no specific factual support that *anyone*, including herself, was "bombarded" with "targeted advertising" as a result of chatting with Lacoste. Nevertheless, this unsubstantiated narrative is ultimately self-defeating because the only aspect of this theory that is remotely clear is that Hootsuite is acting

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                - 11 -

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

AFDOCS:200281197.1

directly for the benefit of Lacoste.[13] *Id.*

In the final analysis, Plaintiff's new allegations do not remotely, let alone plausibly, take this case out of this Court's, Judge Fitzgerald's or Judge Bernal's previous holdings. *See, e.g., Hot Topic*, 2023 WL 2026994 at *10 ("Here, as in *Williams* and *Graham*, Plaintiff does not allege a single fact that suggests the third-party 'intercepted and used the data itself.'" (*citing Williams v. What If Holdings, LLC*, CIV No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Plaintiff has pled herself out of court by alleging that Lacoste's vendor is acting as Lacoste's vendor.

### D.    Plaintiff Fails To Plead The Essential Elements Of Aiding And Abetting, Which Is Foreclosed By Hootsuite's Privacy Policy

Notably absent from Plaintiff's theory that Hootsuite is somehow allowing Meta to harvest the Hootsuite chat transcripts for valuable data so that Meta can somehow bombard the unsuspecting website visitor with "targeted advertising," TAC ¶ 32, is any suggestion that *Lacoste* is aware of this conclusory scheme. *See, generally*, TAC. This failure is independently fatal to Plaintiff's claim against Lacoste because a defendant's specific knowledge of the underlying criminal acts *and* substantial assistance in such acts are essential elements to any "aiding and abetting" claim under California penal law. *Rogers v. Hedgpeth*, 320 Fed.Appx. 815, 817 (9th Cir. 2009) (quoting *People v. Mendoza*, 18 Cal. 4th 1114, 1123, 959 P.2d 735, 739 (1998)); *see also Leason v. Berg*, 927 F.2d 609 (9th Cir. 1991) ("Two **essential elements** in an aiding and abetting claim are: (1) the defendant must have had **actual knowledge** of the wrong and of his role in furthering it; and (2) the defendant must have substantially assisted in the wrong.") (emphasis added).

---

[13]    To argue otherwise would be beyond implausible; it would be absurd. No rational retailer like Lacoste would allow Hootsuite to harvest data from Lacoste's chat transcripts with its customers – let alone "in real time and in transit" – and then use that information to perform targeted advertising for *other competing companies*. This is the type of case the Supreme Court must have had in mind when it directed the lower courts to use basic common sense to screen out nonsensical complaints.

Of course, there is a good reason Plaintiff never alleges Lacoste has knowledge of this purported scheme: it is made up out of whole cloth, as Hootsuite's Privacy Policy incorporated by reference makes definitively clear. *See* TAC ¶ 30.[14]  That is, Hootsuite unequivocally states that "[w]e do not sell your personal data to **any third party for direct marketing purposes** *or any other purpose*."[15]    Plaintiff's unsupported allegations of *any* entity engaging in "targeted advertising" by "harvesting data" from chat transcripts are thus directly contradicted by Hootsuite's Privacy Policy **that Plaintiff expressly relies on**.  Indeed, the *only* reason chat information would be "shared" with third parties – **expressly for non-marketing purposes** – is if such third party was providing the underlying technical infrastructure[16] needed to transfer chat communications to Lacoste.

As the Court of Appeals ruled, courts "need not…accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Indeed, "a plaintiff can…plead himself out of a claim by including unnecessary details contrary to his claims." *Id*. (quoting *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295 (9th Cir. 1998)); *see also Pineda v. Mortgage Electronic Registration Systems, Inc*., 2014 WL 346997 (C.D. Cal. Jan. 29 2014) (dismissing claim with prejudice after court took judicial notice of document which directly contradicted plaintiffs' allegations, and noting that because "Plaintiffs are unable to offer any evidence that the recorded documents are not accurate, leave to amend would be futile"); *Hernandez v. Select Portfolio Servicing, Inc*., 2015 WL 12658459 (C.D. Cal. Oct. 29, 2015) (dismissing claim because allegation in complaint was contradicted by incorporated document).

---

[14]    Citing https://heyday.hootsuite.com/privacy/privacy-policy/.  The Court can and should take judicial notice of documents expressly incorporated into Plaintiff's Complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
[15]    *Id.*
[16]    This would be the equivalent of Verizon "sharing" data with AT&T in order to complete a communication over the latter's network.  Of course, there is no allegation here that Hootsuite used Facebook's technical infrastructure, so this already irrelevant provision is even more so.

ArentFox SchiffLLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK                - 13 -                DEFENDANT'S MEMORANDUM OF POINTS
                                                                AND AUTHORITIES IN SUPPORT OF ITS
                                                                MOTION TO DISMISS
AFDOCS:200281197.1

At bottom, Plaintiff never alleges that Lacoste *knowingly* aided and abetted Hootsuite's purported violations of the statute. And she never will be able to do so. That is because the Hootsuite Privacy Policy Plaintiff herself expressly incorporates into the TAC unequivocally demonstrates Plaintiff's unsupported conspiracy theories are entirely groundless. This warrants dismissal, and because amendment would be futile, dismissal should be with prejudice.

### E.    Plaintiff Fails To Plead That Any Actual Interception Occurred

Plaintiff's Section 631 claim independently fails because she once again does not plausibly allege that any *interception* of her communication *in transit* **on a wire** plausibly occurred, let alone that someone **read or learned** the contents *while they* were in transit – as expressly required by the statute. Rather, what she actually complains of is that any chat communications with Lacoste first reaches Lacoste's website, where the "live chat widget **on the Website** is powered by" Hootsuite – Lacoste's chat service provider. TAC ¶ 28 (emphasis added). Then in the most conclusory fashion, she alleges that Lacoste somehow enables Hootsuite "to secretly intercept in real time, eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." *Id*. And this is despite the fact that her "expert's" report concedes that all the communications exchanged are using HTTPS protocol – which, again, necessarily means that the data is **encrypted in transit**. TAC, Ex. 3. Simply put, "encrypted in transit" means no one is reading anything in transit. This alone is dispositive.

Ultimately, the party to the communication (Lacoste) is receiving the communication first on its website, and *then* it is (allegedly) storing communications with its chat service provider – on a separate server "associated with Hootsuite (as opposed to Defendant)." TAC ¶ 28. This is hardly a profound revelation: communications service provider provides communications service using infrastructure it controls, not its customer. Does Verizon "intercept" text messages because it uses its own cell phone towers, and not ones supplied by wireless

subscribers?  Does Apple "intercept" iMessages because it uses its own servers to store iMessages.  Is every Outlook user "aiding and abetting" "interceptions" of emails because Microsoft uses its own servers to process and store emails?  Is the Court violating CIPA because PACER may be hosted on AWS servers?  These are fundamentally silly questions, but they are conceptually no different than what Plaintiff implies through her new allegations in the TAC:  Hootsuite provides a cloud-based communications service hosted on AWS.  So what? That is simply how the service is provided, and cannot be "interception" as a matter of law.  *See Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245, 1250 (10th Cir. 2012) (service provider's access to data "was in the ordinary course of its core business" and thus company "did not engage in an 'interception' under the ECPA," the federal analogue to CIPA).[17]

Indeed, in analyzing the federal analogue to CIPA, the Wiretap Act, the Ninth Circuit held that intercepting a communication means to "to stop, seize, or interrupt in progress or course **before arrival**."  *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added).  It is conceptually impossible under this definition for a party to a communication to "intercept" that same communication at its destination – here, Lacoste's website, or for Hootsuite to intercept it *after* its arrival at Lacoste's website.  The court in *Rogers* fully embraced this conclusion as well: "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received."  *Rogers*, 52 Cal. App. 3d at 898.  **The Court is bound by this state appellate court ruling.** This is also the express holding of *Adler*, which Plaintiff has cited previously, and compels dismissal of Plaintiff's claim *with prejudice*.  *Adler*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3-4 (C.D. Cal. Aug. 2, 2021) (holding interception in transit was impossible because "Plaintiffs sent text messages to a celebrity's Community number, and the device paired with that number 'received the

---

[17]    The "analysis for a violation of CIPA is the same as that under the federal Wiretap Act."  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018).

information, **effectively completing the communication**.'") (emphasis added); *see also In re Vizio Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing **much more detailed** and supported allegations of interception); *Rosenow v. Facebook, Inc.,* No. 19-cv-1297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting motion to dismiss federal wiretap claim where allegations that communications were intercepted "in transit" were "conclusory").

Put differently, the communication, if any, Plaintiff had on Lacoste's website reached Lacoste – the intended recipient – there is no dispute about that.  Again, **under binding Ninth Circuit and state court precedent**, interception cannot occur unless defendants somehow "halt the transmission of the messages to their intended recipients."  *NovelPoster v. Javitch Canfield Grp.*, 140 F.Supp.3d 938, 952 (N.D. Cal. 2014).  Conversely, "once an [electronic communication] has been received by the destination server, a communication becomes 'stored' **and contemporaneous interception is no longer possible**.").  *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (N.D. Cal. Oct. 13, 2016) (emphasis added); *see also American Eagle*, 2023 WL 2469630, *8-10 (dismissing indistinguishable allegations that chat service provider "is able to gather the chat feature in real time" as merely "conclusory allegations" insufficient to meet *Twobly/Iqbal* pleading standards); *Cinmar*, 2023 WL 2415592, *9-10 (same).[18]  And this is *exactly* what Plaintiff's "computer expert" confirms – the communication reaches the destination server before anyone can possibly read it.  TAC, Ex. 2.

What Lacoste does with a communication *after* its stored in the destination server is legally irrelevant under Section 631.  Indeed, Section 632 would be entirely superfluous if recording a communication at its end point was also an "interception

---

[18]    *See also People v. Carella*, 191 Cal.App.2d 115, 137-38 (1961) (holding 'no interception occurred' under predecessor statutes to Wiretap Act and Section 631 where stenographer from DA's office answered telephone and created transcripts of 45 calls: "no wire tapping or other connecting method was used' and 'messages sent were received in the ordinary course **over the means of transmission provided**.") (emphasis added).

in transit" under Section 631. It is not surprising, therefore, that California courts have consistently analyzed CIPA claims concerning "recording" chat transcripts under Section 632, and not 631. *See Nakai,* 183 Cal. App. 4th at 519; *see also Cho,* 2010 WL 4380113, at *5; *Alexander Wang,* at 2-3.  And as noted above, federal district courts are required to defer to California state courts in their interpretation of CIPA. Plaintiff's conclusory allegations that Meta ***later*** harvests the Hootsuite chat transcripts at some unspecified time after being in storage removes all doubt that this is not an actual "interception" case.  TAC ¶ 34.  Again, as the Ninth Circuit has ruled, interception must occur ***before*** the communication reaches Lacoste.

Further, the "eavesdropping" clause of Section 631 specifically entails "willfully attempting to **learn the contents** or meaning of a communication **in transit *over a wire***."  Cal. Penal Code § 631 (emphasis added).  Plaintiff **nowhere alleges** that any entity is attempting to **learn the contents** of her communication while it is **encrypted in transit** on some unspecified wire *before* reaching Lacoste's website.  Plaintiff never alleges any facts to establish the actual elements of the claim at issue.[19]  Ultimately, Plaintiff is attempting to dress up a Section 632 claim – which prohibits *recording confidential communications* without all parties' consent – as a Section 631 "wiretapping" claim – which applies to *third parties* **reading** private communications *in transit over a wire* **before** it arrives at Lacoste.com.  The latter scenario is not remotely this case.  After the communication reaches Lacoste's website, it becomes, at most, a Section 632 issue how Lacoste stores its (non-confidential) chat transcripts with its service provider Hootsuite.  There can be no interception under these allegations, and Plaintiff's Section 631 claim should be dismissed on this independent ground with prejudice.

**F.    CIPA Cannot Survive Constitutional Scrutiny**

CIPA is also impermissibly discriminatory, an unreasonable time, place and

---

[19]    Put differently, "eavesdrop in real time and during transmission" is vacuous filler that is not even responsive to the specific conduct prescribed by the statute.

manner restriction, and runs afoul of the Due Process Clause.

First, as Lacoste has already raised, Section 631(b) expressly exempts "the services and facilities of the public utility" from the scope of CIPA.  The only way CIPA can pass constitutional muster today is if new entrants into the communications marketplace share the same protections as traditional public utilities; that is, if it does *not* favor particular service providers over others.  Section 631, however, does expressly the opposite: it favors legacy telecommunications service providers over competing information service providers, making CIPA facially discriminatory.  *See Beckles v. U.S.*, 580 U.S. 256, 262 (penal laws that "encourage arbitrary and discriminatory enforcement" are unconstitutional). In other words, CIPA is not a reasonable time, place and manner restriction because it would exempt parties from liability if they communicate *the same information* over one channel – such as assisting a customer by telephone – but would ostensibly criminalize "processing" the same information when provided over different channels, like cloud-based chat services, everything else equal.  This 1967 law cannot pass a rational basis review in 2024, let alone strict scrutiny.

Similarly, it makes little sense for other sections of CIPA, such as Section 632, to protect only "confidential" communications from being recorded[20] at their destination without the consent of all parties, but then (ostensibly) protect *all* communications in transit, regardless of any legitimate expectation of privacy or confidentiality concerns.  Indeed, as previously documented in these cases, this team of "testers" would visit a website and simply type or click "returns," and then leave the chat after setting up their claim.  There is no legitimate rationale for the State of California to literally criminalize a party "aiding and abetting" a third party to have access to a chat communication if it's in transit, but then take no issue if the

---

[20]    Under binding Ninth Circuit case law, recording speech qualifies as speech itself entitled to the protection of the First Amendment. *See Animal Legal Def. Fund. v. Wasden*, 878 F.3d 1184, 1203–04 (9th Cir. 2018).

*same* party discloses the *same* communication to the *same* third party – if they count to 10 before sharing it.  This is not a rational restriction on speech.

CIPA also runs afoul of the Due Process Clauses of the U.S. Constitution. Laws, particularly penal laws like CIPA, must give ordinary people fair notice of what conduct is being punished. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Laws that are too vague are unenforceable because they fail to establish standards for the public that are sufficient to guard against arbitrary enforcement. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999). Further, principles of statutory interpretation require that acts of a legislative body receive **uniform interpretation**, regardless of whether the law is invoked in an administrative, civil, or criminal case. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005); *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.").

To determine whether a statute is unconstitutionally vague, courts consider whether the law: (1) fails to provide a person of ordinary intelligence fair notice of what is prohibited; or (2) is so standardless that it authorizes or encourages seriously discriminatory enforcement. *See United States v. Williams*, 553 U.S. 285, 304 (2008). As the Supreme Court explained, "[in] our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). A criminal law fails to meet this standard when it is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

With respect to CIPA, even courts admit that what constitutes a protected communication within the scope of CIPA lacks any clarity, and its plain meaning within the statute is not evident. *See, e.g., Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *16 (S.D. Cal. July 27, 2023) ("The statute does not provide clarity on the definition of 'contents,' and **so courts have penciled**

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

**in a dividing line**.") (emphasis added). By definition, if courts **admit there is no clarity** and are forced to "pencil in" the meaning of **essential elements** to provide guardrails, CIPA is necessarily too vague to be enforceable.

Moreover, experienced and highly-educated judges interpret CIPA in diametrically opposed ways – with a "set of cases, led by Judge Beeler in *Graham v. Noom*, hold[ing] that software vendors … are 'extension[s]' of the websites that employ them, and thus not third parties within the meaning of the statute." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 899 (N.D. Cal. 2023) (citing *Graham v. Noom*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)) ("*Javier Remand*").  In contrast, some courts, like Judge Breyer in the *Javier Remand*, interpret Section 631(a) as not being susceptible to a vendor "extension" exception.  *Javier Remand*, 649 F. Supp. 3d at 899 ("reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process).").  While this Court has embraced the former interpretation and rejected the latter, it is indisputable that judges are interpreting CIPA in materially inconsistent ways – making it impossible persons of common intelligence have fair notice of what CIPA actually prohibits.

At bottom, thousands of companies did not simply decide to violate the California Penal Code by offering an industry-standard – *and* CCPA-compliant – website chat feature to field online customer inquiries. Given CIPA's infirmities detailed above, the solution is clear: CIPA should be invalidated on Constitutional grounds, while consumers will still be amply protected under the CCPA, the comprehensive privacy law that was enacted specifically to address online privacy. In short, CIPA has outlived its usefulness, and it is facially unconstitutional today.

//

//

//

//

//

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 8:23-CV-235-SSS-KK          - 20 -

AFDOCS:200281197.1

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

## V.    **CONCLUSION**

For the foregoing reasons, Lacoste respectfully requests that Plaintiff's Third Amended Complaint be dismissed in its entirety with prejudice.

Dated:  May 31, 2024                    **ARENTFOX SCHIFF LLP**


By: _____
LYNN R. FIORENTINO
Attorney for Lacoste USA, Inc.

ArentFox Schiff LLP
Attorneys At Law
Los Angeles

Case No. 8:23-CV-235-SSS-KK
- 21 -
AFDOCS:200281197.1

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS

EXHIBIT A

E-Served: Dec 27 2023  11:44AM PST  Via Case Anywhere

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 10

**23STCV12422**                                                      December 27, 2023
**SONYA VALENZUELA vs ALEXANDER WANG LLC**                           8:26 AM

Judge: Honorable William F. Highberger          CSR: None
Judicial Assistant: R. Aspiras                  ERM: None
Courtroom Assistant: R. Sanchez                 Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Ruling on Submitted Matter

The Court, having taken the matter under submission on 12/19/2023 for Hearing on Demurrer -
without Motion to Strike to Complaint, now rules as follows:

**The Defendant's Demurrer to Complaint filed by Alexander Wang LLC on 11/21/2023 is
Sustained without Leave to Amend.**

Plaintiff brings two causes of action—for violation of Penal Code sections 631 and 632.7—
against Defendant, alleging that Defendant aided and abetted a third-party vendor's recording of
online customer service chats initiated by Plaintiff and putative class members.

Defendant's first line of attack is to argue that it is exempt from the California Penal Code by
virtue of being a limited liability company. Under the Penal Code, "the word 'person' includes a
corporation as well as a natural person[.]" Pen. Code § 7. Defendant argues that section 7's non-
inclusion of limited liability companies indicates limited liability companies are generally
outside the ambit of the Penal Code, including sections 631 and 632.7. Defendant cites little case
law in support of this proposition, relying only on a single case that predates the advent of
limited liability companies and merely held that, while a *general partnership* is not subject to the
Penal Code, its partners are because "so far as criminal responsibility is concerned, a partnership
is not recognized as a person separate from its component members in the sense that a
corporation is a separate entity . . . and therefore [a partnership] cannot commit a crime." *People
v. Schomig*, 74 Cal. App. 109, 112-13 (1925). Limited liability companies are, like corporations,
separate entities from their members, *see* Corp. Code § 17701.04(a), and therefore are treated
like corporations for the purpose of Penal Code liability. The Court will address the sufficiency
of Plaintiff's claims under the specific provisions that were allegedly violated.

Plaintiff's first cause of action is for violation of Penal Code section 631(a), which provides as
follows:

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 10

**23STCV12422**                                      December 27, 2023
**SONYA VALENZUELA vs ALEXANDER WANG LLC**                8:26 AM

Judge: Honorable William F. Highberger       CSR: None
Judicial Assistant: R. Aspiras               ERM: None
Courtroom Assistant: R. Sanchez              Deputy Sheriff: None

---

Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by . . . .

Section 631(a) "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation[,]" which is covered by section 632. *Warden v. Kahn*, 99 Cal. App. 3d 805, 811-12 (1979); *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975).

Defendant argues it is not liable under section 631 because it was a party to the chats with customers that Plaintiff alleges were unlawfully recorded. Plaintiff instead alleges that Defendant unlawfully aided and abetted the third-party vendor's recording of customer service chats, which the vendor mined for data and sold to Meta, causing Plaintiff and putative class members to be bombarded with targeted advertising. *See* Compl. at 1:1-9, ¶¶ 10-22, 32-34.

While section 631 criminalizes "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in section 631(a), those acts are "eavesdropping by a third party and not . . . recording by a participant to a conversation." *Warden*, 99 Cal. App. 3d at 811. It would be an oddity if section 631(a) did not criminalize a party recording one of its own conversations, but did criminalize that party aiding, agreeing with, employing, or conspiring with another to record a conversation it was party to. Employing another to record one's conversations is the sort of conduct that would be outlawed by section 632. While "[t]he rule of the common law, that penal statutes are to be strictly construed, has no application to" the California Penal Code, its "provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." Pen. Code § 4. In light of section 632's concern with

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 10

**23STCV12422**                                           December 27, 2023
**SONYA VALENZUELA vs ALEXANDER WANG LLC**                        8:26 AM

Judge: Honorable William F. Highberger          CSR: None
Judicial Assistant: R. Aspiras                  ERM: None
Courtroom Assistant: R. Sanchez                 Deputy Sheriff: None

recordings made by a party to the recorded communication, the fair import of the terms of the aiding, agreeing, employing, and conspiring provision of section 631(a) is that it only covers instances where the guilty party works with another party to eavesdrop on the communications of separate parties. *See also People ex rel. Lungren v. Superior Court*, 14 Cal. 4th 294, 302 (1996) ("[s]tatutes will be construed so as to eliminate surplusage"). Because the facts pled by Plaintiff indicate Defendant's conduct is outside the scope of section 631, the demurrer to the first cause of action is sustained without leave to amend. The Court need not reach Defendant's other arguments about the weaknesses of the first cause of action, and accordingly declines to address them.

Plaintiff's second cause of action is for violation of Penal Code section 632.7, which provides in pertinent part as follows:

> Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by . . . .

Pen. Code § 632.7(a). This provision has been summarized by the Supreme Court of California as criminalizing interception and recordation of communications transmitted between "a cellular or cordless telephone and another telephone." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021). Plaintiff alleges that her claims are within section 632.7 because she and putative class members communicated with Defendant via telephony. *See* Compl. ¶¶ 19, 40-43. Plaintiff alleges that "Defendant's chat communications from its Website are transmitted to visitors by either cellular telephony or landline telephony" and cites an *Encyclopedia Britannica* article explaining that the Internet "*works through a series of networks that connect devices around the world through telephone lines*." *Id.* ¶ 20 (italics in original). But Plaintiff does not allege that Defendant used a telephone to transmit those communications, only that it used the Internet, which Plaintiff presumes uses a telephone line. Even if this presumption is correct, Plaintiff has not alleged that Defendant used a telephone to send and receive communications, and thus has not pled that communications were transmitted between two telephones. *See Smith*, 11 Cal. 5th at 187. For this reason, the demurrer to the second cause of action is sustained. No leave to amend is given because Plaintiff cannot allege that Defendant or its vendor used a telephone to communicate with Plaintiff and putative class members. *See* Compl. ¶ 10 ("[t]he chat function is run from the [third party] company's servers").

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 10

**23STCV12422**                                                    December 27, 2023
**SONYA VALENZUELA vs ALEXANDER WANG LLC**                          8:26 AM

Judge: Honorable William F. Highberger        CSR: None
Judicial Assistant: R. Aspiras                 ERM: None
Courtroom Assistant: R. Sanchez                Deputy Sheriff: None

Defendant also argues that the California Invasion of Privacy Act, which encompasses Penal Code sections 631 and 632.7, is unconstitutional based on *Project Veritas v. Schmidt*, 72 F.4th 1043 (9th Cir. 2023), wherein an Oregon recording statute was successfully challenged under the First Amendment. While it is possible that California's law is unconstitutional for the same reasons the *Project Veritas* court found Oregon's law unconstitutional, the Court declines to unnecessarily address a constitutional issue given the other fatal infirmities of Plaintiff's claims. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988) (there is a "prudential concern that constitutional issues not be needlessly confronted").

Non-Appearance Case Review Re: Lodging of [Proposed] Judgment is scheduled for 02/08/2024 at 09:00 AM in Department 10 at Spring Street Courthouse.

Clerk hereby gives notice.

Clerk's Certificate of Service By Electronic Service is attached.